IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ERIK MONROE,<br><br>  Plaintiff,<br><br>  v.<br><br>G. MORTELL, et al.,<br><br>  Defendants. | No. 2:19-CV-2218-WBS-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss. ECF No. 17.

**I. PLAINTIFF'S ALLEGATIONS**

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff initially brought suit against six Defendants. See id. at 1. In light of the Court's prior screening order this case proceeds against two Defendants. See ECF Nos. 9, 10, and 11. The two remaining Defendants are: (1) G. Mortell, a High Desert State Prison correctional officer; and (2) N. Dordon, a sergeant at High Desert State Prison and Mortell's superior officer. See ECF No. 11. According to the prior screening order, the Court recognizes four claims. See id.

///

///

1

<u>Claim I – Eighth Amendment: Cruel and Unusual Punishment – Harassment</u>

Plaintiff claims Defendant Mortell repeatedly used derogatory, discriminatory, and racist language towards Plaintiff intending to threaten, provoke, and humiliate him. Mortell allegedly attempted to provoke Plaintiff on April 1, 2019, when Mortell said, "Your kind is suppose to be locked up and it's my job to make sure," and on April 4, 2019, with "I'm gonna have you in the hole soon." <u>See</u> ECF No. 1, pg. 6. On June 4, 2019, Mortell said "I told you I was gonna get you! I'm gonna hang you live I s[aid]! You don't have a job, your through!" <u>Id.</u> at 7. On June 7, 2019, Mortell approached Plaintiff in front of the canteen and said "Your mine watch! Oh you can't talk? Say something!" <u>Id.</u> Plaintiff also alleges one incident of sexual harassment which caused Plaintiff mental anguish and anxiety. <u>Id.</u> Mortell allegedly opened Plaintiff's cell door to expose Plaintiff as he was using the toilet in view of a female correctional officer and Mortell commented, "Just trying to see if what they say about Blacks is true!" while "staring at Plaintiff's crotch." <u>Id.</u> at 5. As a result of the sexual harassment, Plaintiff claims he sought mental health services and the continuing harassment caused Plaintiff's medication to increase. <u>Id.</u> at 5-6.

<u>Claim II – Fourteenth Amendment - Equal Protection</u>

Derived from the prior facts, Plaintiff claims Defendant Mortell harassed Plaintiff with discriminatory and racist remarks. <u>Id.</u> Plaintiff claims that as part of Mortell's targeted discrimination, Mortell had Plaintiff rehoused from Building 2 to Building 5 for no penological purpose other than the order and will of Mortell. <u>Id.</u> at 8.

<u>Claim III – Liability of Defendant Dordon – Supervisory Liability</u>

Plaintiff claims that he reported Mortell's actions to Defendant Dordon, the sergeant and immediate supervisor of Mortell. <u>Id.</u> Dordon did not move Mortell away from Plaintiff or stop Mortell's harassment against Plaintiff. <u>Id.</u> Dordon also authorized Mortell's request to rehouse Plaintiff for "no penological reason but the will and order of C/O Mortell." <u>Id.</u>

/ / /
/ / /
/ / /
/ / /

1                               Claim IV – First Amendment Right to Free Speech – Retaliation

2             According to the complaint, Plaintiff was charged with two rules violations as retaliation for reporting Mortell's harassment. Id. at 7. As punishment, Plaintiff was moved to Building 5, where Mortell barred Plaintiff from going to his job and took Plaintiff's private property. Plaintiff claims that on June 11, 2019, Mortell prohibited Plaintiff from attending Plaintiff's job assignment for 60 days, resulting in Plaintiff losing his job assignment and accompanying privileges. On August 27, 2019, Mortell removed the T.V. antenna from Plaintiff's cell door "for no penological reason but harassment and retaliation." Id.

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants argue in general that Plaintiff has failed to plead sufficient facts to state claims for sexual harassment, verbal harassment, equal protection, and supervisory liability. Defendants seek dismissal for all claims except Plaintiff's claim for retaliation. See ECF No. 17-1, page 10.

///

///

///

Defendants raise the following specific arguments:

1. Plaintiff fails to state a cognizable claim for verbal harassment because verbal harassment, even of a sexual nature, does not violate the Eighth Amendment or constitute cruel and unusual punishment without physical touching. Id. at 5.

2. Plaintiff fails to state a cognizable claim for verbal harassment because none of Mortell's alleged threats "can be considered unusually harsh or gross for a prison setting." Id. at 7-8.

3. Plaintiff fails to demonstrate that Mortell racially discriminated against Plaintiff because Mortell's language is insufficient to establish that Mortell's actions had a racially discriminatory intent. Id. at 8-9.

4. Plaintiff fails to state a supervisory liability claim because Mortell's Eighth Amendment claim fails, so any claim against Dordon that is based on Mortell's conduct also fails. Id. at 9.

Defendants concede Plaintiff's retaliation claim against Defendant Mortell is sufficient to proceed past the pleading stage. See id. at 10.

### A. Sexual and Verbal Harassment

In Claim I, Plaintiff alleges that Defendant Mortell continually sexually and verbally harassed Plaintiff between April and July of 2019. See ECF No. 1, pgs. 5-6. Defendants move to dismiss Plaintiff's Eighth Amendment claim for sexual harassment, arguing that verbal sexual harassment is insufficient without touching. See ECF No. 17-1, pages 5-6. The Court agrees. Defendants also argue that Plaintiff's claim for verbal assault is insufficient because Mortell's language was not unusually gross for a prison setting and caused no psychological damage. See id. at 7. The Court does not agree.

#### 1. Whether Mortell Sexually Harassed Plaintiff

Plaintiff alleges Defendant Mortell opened Plainitiff's cell door while Plaintiff had a bowel movement in view of a female counselor. See ECF No. 1, page 5. Mortell then allegedly stared at Plaintiff's crotch and said, "just trying to see if what they say about Blacks is true!" Id. Plaintiff asserts that he sought mental health treatment and elevated his medication twice in response to Mortell's harassment. See id. However, Defendants argue that strictly verbal sexual harassment is not cognizable under the Eighth Amendment. See ECF No. 17-1, pg. 5-6. The Court agrees.

1    While "the Ninth Circuit has recognized that sexual harassment may constitute a
2 cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated
3 between sexual harassment that involves verbal abuse and that which involves allegations of
4 physical assault, finding the later to be in violation of the constitution." Minifield v. Butikofer,
5 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk, 204 F.3d at 1198)); compare Hill v.
6 Rowley, 658 F. App'x 840, 841 (9th Cir. 2016) (finding allegations of deliberate, unwanted
7 touching sufficient to state a claim for sexual harassment that violates the Eighth Amendment),
8 and Wood v. Beauclair, 692 F.3d 1041, 1046-51 (9th Cir. 2012) (reversing summary [*9]
9 judgment on behalf of defendant because plaintiff's allegations of sexual harassment that included
10 physical contact of a sexual nature was sufficient to state Eighth Amendment claim), with Austin,
11 367 F.3d at 1171-72 (officer's conduct was not sufficiently serious to violate the Eighth
12 Amendment where officer exposed himself to prisoner but never physically touched him),
13 Blacher v. Johnson, 517 F. App'x 564 (9th Cir. 2013) (sexual harassment claim based on verbal
14 harassment insufficient to state a claim under § 1983) (citation omitted), and Somers v. Thurman,
15 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the
16 prohibition against cruel and unusual punishment would trivialize the objective component of the
17 Eighth Amendment test and render it absurd.").
18    The Ninth Circuit also holds incidents involving fondling, touching, or exposure
19 do not give rise to a claim under the Eighth Amendment. Defendants cite Watison, which
20 concluded there was not an Eighth Amendment violation when an officer approached the plaintiff
21 on the toilet and rubbed his thigh on the plaintiff's leg while smiling in a sexual manner. Watison
22 v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012). Defendants assert the same holds true when the
23 harassment "is tinged with race." ECF No. 17-1, page 6. See Freeman v. Arpaio, 125 F.3d 732
24 (9th Cir. 1997) (abusive language directed at prisoner's religious and ethnic background not
25 actionable), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884–85 (9th
26 Cir. 2008); Hoptowit v. Ray, 682 F.2d 1237, 1252 (9th Cir. 1982) (court cannot order guards to
27 refrain from using racial slurs to harass prisoners); Burton v. Livingston, 791 F.2d 97, 99, 101 n.
28 1 (8th Cir. 1986) (use of racial slurs in prison does not offend Constitution); accord Tombs v.

6

Rackly, 2:13-CV-1341 JAM KJN, 2013 WL 4678919, at *3 (E.D. Cal. Aug. 30, 2013); Williams v. Lindsey, C 00-3949 CRB (PR), 2000 WL 1677955, at *1 (N.D. Cal. Nov. 2, 2000). Lastly, Defendants cite Austin, where the Court concluded that defendant, an officer in a control booth, did not violate the Eighth Amendment when he exposed his penis to the plaintiff, who is black, and said, "come suck this white dick, boy." Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004). On the basis of this authority, Defendants' argument prevails.

Plaintiff fails to make an Eighth Amendment claim for sexual harassment without allegations that Mortell touched him. Without facts that show Mortell did more than open the cell door and make a racially charged comment, Mortell's conduct does not offend the Constitution. The sexual harassment claim under Claim I should be dismissed with prejudice.

2.  Whether Mortell Verbally Harassed Plaintiff

According to the complaint, Mortell verbally harassed Plaintiff on multiple occasions, subjected Plaintiff to searches, and had Plaintiff's personal property destroyed. See ECF No. 17-1, page 2. On April 26, 2019, Mortell allegedly searched Plaintiff and told Plaintiff "I'm here to disrupt your program." Id. On May 24, Mortell searched Plaintiff's cell and ordered another officer to destroy Plaintiff's new mattress that Plaintiff obtained that morning. See id. On multiple occasions, Mortell regularly harassed Plaintiff with comments: "I'm gonna have you in the hole soon;" "I'm gonna hang your ass watch;" "You can't win, this is my yard!" and other like comments previously discussed. Plaintiff states that he sought mental health treatment and an increase in medication as a result of Mortell's comments and conduct. See id. at 6. Defendants argue that threats do not equate to the act itself and none of Mortell's comments "rise to the level of cruel and unusual punishment." ECF No. 17, pages 7-8. The Court disagrees.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

7

1   Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

2   "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

3   801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

4   two requirements are met: (1) objectively, the official's act or omission must be so serious such

5   that it results in the denial of the minimal civilized measure of life's necessities; and (2)

6   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

7   inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

8   official must have a "sufficiently culpable mind."  See id.

9         Allegations of verbal harassment do not state a claim under the Eighth

10  Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner]

11  psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also

12  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

13  In addition, the prisoner must show that the verbal comments were unusually gross, even for a

14  prison setting, and that he was in fact psychologically damaged as a result of the comments.

15  See Keenan, 83 F.3d at 1092.

16        To state a claim of verbal harassment, Plaintiff must show that Mortell's language

17  was unusually gross for a prison setting and that Mortell intended to cause psychological damage

18  to Plaintiff. Defendants argue that Mortell's alleged comments were not unusually gross and cite

19  to Somers, wherein the inmate plaintiff was subjected to cavity searches by female officers while

20  the officers joked and pointed at the plaintiff. ECF No. 17-1, page 8. The case in question

21  acknowledges the "exchange of verbal insults between inmates and guards" on a daily basis and

22  that cavity searches conducted with inappropriate comments do not violate the Eighth

23  Amendment. See id. While Defendants address Mortell's comments toward Plaintiff, Defendants

24  fail to address Mortell's conduct that Plaintiff alleges were part of Mortell's harassment

25  campaign. Construed liberally, the facts of the complaint are taken as a whole. Mortell allegedly

26  destroyed Plaintiff's new mattress and removed Plaintiff's tv antenna from Plaintiff's cell door

27  "for no penological reason but harassment and retaliation." ECF No. 1, page 7. As a result,

28  Plaintiff claims he sought mental health treatment and elevated his medication to cope with

Mortell's harassment. Id. The Court finds that Plaintiff has pleaded enough for an Eighth Amendment violation for verbal harassment alleged in Claim I.

### B. Equal Protection – Racial Discrimination

Plaintiff alleges Mortell racially discriminated against him through racial comments and by opening the cell door to expose Plaintiff. See ECF No. 1, page 6. Defendants argue that "rather than racial discrimination, it appears that the primary impetus behind Mortell's actions was the fact that Plaintiff had filed a grievance against him on or about April, 1, 2019." ECF No. 17-1, page 9. Defendants argue that Mortell's allegedly racist comment "Your kind is suppose to be locked up" does not establish a racial bias. Id. at 8. The Court agrees.

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted) (emphasis in original); see also Byrd v. Maricopa Cnty. Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

On April 1, 2019, Defendant Mortell allegedly tried to provoke Plaintiff with the following comment: "Your kind is suppose to be locked up and it's my job to make sure." ECF No. 1, pg. 6. Defendants argue that, on its own, this comment does not establish discriminatory intent and is merely inappropriate. See ECF No. 17-1, page 8. Defendants use Austin to assert that verbal harassment, even when tinged with race, does not violate the Eighth Amendment.

Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004). Burton also asserts that racially offensive language by itself may not state an Equal Protection claim unless it is "coupled with conduct infringing the prisoner's right to security of his person," which then raises an inference that the officer's conduct was motivated by racial bias. Burton v. Livingston, 791 F.2d 97, 101 (8th Cir. 1986). In claiming that an officer's conduct was motivated by racial bias, the plaintiff must prove that the defendant treated the plaintiff differently than any similarly situated individual. Pimentel v. Dreyfus, 670 F.3d 1096, 1106 (9th Cir. 2012) ("To state an equal protection claim of any stripe, whatever the level of scrutiny it invites, a plaintiff must show that the defendant treated the plaintiff differently from similarly situated individuals."); Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (equal protection claim properly dismissed when plaintiff "failed to adequately allege that he was intentionally treated differently from similarly situated inmates").

In this case, Plaintiff fails to show that Mortell's treatment was based on Plaintiff's status as a member of a protected class. Nor does Plaintiff demonstrate that Mortell singled Plaintiff out and treated him differently from similarly situated inmates. To the contrary, Plaintiff specifically alleges under Claim IV that Mortell's actions were based on retaliation for Plaintiff's grievances. Considering the nature of the claim, and to the extent Plaintiff believes that Mortel's conduct was driven by both a desire to retaliate as well as some racial animus, it is possible for Plaintiff to cure these defects and Plaintiff should be provided an opportunity to amend his equal protection claim alleged in Claim II.

**C.     Defendant Dordon – Supervisory Liability**

According to Plaintiff, Defendant Dordon acted as Mortell's Sergeant throughout the events of the complaint. Plaintiff alleges that Dordon authorized Mortell's request to rehouse with the knowledge of Mortell's alleged harassment. See ECF No. 1, pg. 8. Dordon allegedly allowed this request for no penological reason other than Mortell's request to have Plaintiff moved. See id. Defendants argue that Plaintiff's claim against Dordon necessarily fails because Plaintiff does not state a cognizable Eighth Amendment claim against Mortell based on sexual harassment.

1  Supervisory personnel are generally not liable under § 1983 for the actions of their
2 employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no
3 respondeat superior liability under § 1983). A supervisor is only liable for the constitutional
4 violations of subordinates if the supervisor participated in or directed the violations. See id. The
5 Supreme Court has rejected the notion that a supervisory defendant can be liable based on
6 knowledge and acquiescence in a subordinate's unconstitutional conduct because government
7 officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct
8 and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory
9 personnel who implement a policy so deficient that the policy itself is a repudiation of
10 constitutional rights and the moving force behind a constitutional violation may, however, be
11 liable even where such personnel do not overtly participate in the offensive act. See Redman v.
12 Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

13  When a defendant holds a supervisory position, the causal link between such
14 defendant and the claimed constitutional violation must be specifically alleged. See Fayle v.
15 Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
16 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in
17 civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
18 Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the
19 official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

20  To be held liable as a supervisor, Dordon must have deprived Plaintiff of his rights
21 through Dordon's own conduct. Defendants argue that Plaintiff has not sufficiently alleged a
22 causal link between Dordon and Plaintiff's claim that Dordon was deliberately indifferent to the
23 sexual harassment. ECF No. 17, page 9. Plaintiff claims Dordon had knowledge of Mortell's
24 conduct when Dordon authorized Plaintiff's rehousing and did not reassign Mortell to another
25 post. Dordon's authorization to rehouse Plaintiff and lack of action regarding Mortell's conduct,
26 regardless of Dordon's motivations or knowledge, are not indicative of participation or an order
27 from Dordon to Mortell to harass Plaintiff. Plaintiff fails to show Dordon's involvement with
28 Mortell's conduct and thus Plaintiff fails to state an Eighth Amendment claim against Dordon. To

the extent, however, Plaintiff can allege facts to show Dordon acted with the intent to harass Plaintiff or that Dordon ordered Mortell to harass Plaintiff, Plaintiff may be able to cure the defects in Claim III. Plaintiff should, therefore, be granted leave to amend Claim III.

## IV. CONCLUSION

Based on the foregoing, the Court recommends that:

1. Defendants' motion to dismiss, ECF No. 17, be granted in part and denied in part;

2. Defendants' motion be granted as to Plaintiff's claims of sexual harassment and racial discrimination against Defendant Mortell;

3. Defendants' motion be granted as to Plaintiff's claim against Defendant Dordon;

4. Defendants' motion be denied as to Plaintiff's verbal harassment claim against Defendant Mortell; and

5. Plaintiff's complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 11, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE