IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ERIK MONROE,<br><br>    Plaintiff,<br><br>    v.<br><br>G. MORTELL, et al.,<br><br>    Defendants. | No. 2:19-CV-2218-WBS-DMC-P<br><br><br>AMENDED FINDINGS AND RECOMMENDATIONS[1] |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action. Pending before the Court is Defendants' motion to dismiss, ECF No. 17.

The Court issued findings and recommendations addressing Defendants' motion on June 14, 2021. See ECF No. 29. Thereafter, Defendants filed timely objections. See ECF No. 31. Defendants object to the Court's recommendation that their motion to dismiss be denied as to Plaintiff's verbal harassment claim. See id. The Court issues these amended findings and recommendations to address Defendants' objections.

/ / /

/ / /

/ / /

---

[1] These amended findings and recommendations supersede the findings and recommendations issued on June 14, 2021, ECF No. 29.

# I. BACKGROUND

## A. **Allegations**

Plaintiff initially brought suit against six defendants. See ECF No. 1, pg. 1. In light of the Court's prior screening order, this case proceeds against two defendants. See ECF Nos. 9, 10, and 11. The two remaining defendants are: (1) G. Mortell, a High Desert State Prison correctional officer; and (2) N. Dordon, a sergeant at High Desert State Prison and Mortell's superior officer. See ECF No. 11. According to the prior screening order, the Court recognizes four claims against these two defendants. See id.

### Claim I – Eighth Amendment: Cruel and Unusual Punishment – Harassment

Plaintiff claims Defendant Mortell repeatedly used derogatory, discriminatory, and racist language towards Plaintiff intending to threaten, provoke, and humiliate him. Mortell allegedly attempted to provoke Plaintiff on April 1, 2019, when Mortell said, "Your kind is supposed to be locked up and it's my job to make sure," and on April 4, 2019, with "I'm gonna have you in the hole soon." See ECF No. 1, pg. 6. On June 4, 2019, Mortell said, "I told you I was gonna get you! I'm gonna hang you live I s[aid]! You don't have a job, your through!" Id. at 7. On June 7, 2019, Mortell approached Plaintiff in front of the canteen and said, "Your mine watch! Oh you can't talk? Say something!" Id. Plaintiff also alleges one incident of sexual harassment which caused Plaintiff mental anguish and anxiety. Id. Mortell allegedly opened Plaintiff's cell door to expose Plaintiff as he was using the toilet in view of a female correctional officer and Mortell commented, "Just trying to see if what they say about Blacks is true!" while "staring at Plaintiff's crotch." Id. at 5. As a result of the sexual harassment, Plaintiff claims he sought mental health services and the continuing harassment caused Plaintiff's medication to increase. Id. at 5-6.

### Claim II – Fourteenth Amendment: Equal Protection

Derived from the prior facts, Plaintiff claims Defendant Mortell harassed Plaintiff with discriminatory and racist remarks. Id. Plaintiff claims that as part of Mortell's targeted discrimination, Mortell had Plaintiff rehoused from Building 2 to Building 5 for no penological purpose other than the order and will of Mortell. Id. at 8.

                          Claim III – Supervisory Liability:  Defendant Dordon

Plaintiff claims that he reported Mortell's actions to Defendant Dordon, the sergeant and immediate supervisor of Mortell.  Id.  Dordon did not move Mortell away from Plaintiff or stop Mortell's harassment against Plaintiff.  Id.  Dordon also authorized Mortell's request to rehouse Plaintiff for "no penological reason but the will and order of C/O Mortell."  Id.

                          Claim IV – First Amendment:  Retaliation

According to the complaint, Plaintiff was charged with two rules violations as retaliation for reporting Mortell's harassment.  Id. at 7.  As punishment, Plaintiff was moved to Building 5, where Mortell barred Plaintiff from going to his job and took Plaintiff's private property.  Plaintiff claims that on June 11, 2019, Mortell prohibited Plaintiff from attending Plaintiff's job assignment for 60 days, resulting in Plaintiff losing his job assignment and accompanying privileges.  On August 27, 2019, Mortell removed the T.V. antenna from Plaintiff's cell door "for no penological reason but harassment and retaliation."  Id.

**B.**    **Procedural History**

Defendants filed a motion to dismiss Plaintiff's complaint.  See ECF No. 17.  In their motion, Defendants moved to dismiss each of Plaintiff's claims except Plaintiff's retaliation claim against Defendant Mortell, which Defendants concede should move forward past the pleading stage.  See id.  The Court issued findings and recommendations granting Defendants' motion as to Plaintiff's sexual harassment claim, racial discrimination claim, and supervisor liability claim.  See ECF No. 29.  The Court recommended Plaintiff be granted leave to amend as to these claims.  See id.  However, the Court recommended Defendants' motion be denied as to Plaintiff's Eighth Amendment verbal harassment claim.  See id.

Defendants filed objections to the findings and recommendations.  See ECF No. 31.  First, Defendants contend that two of the cases discussed in the findings and recommendations do not stand for the propositions for which they are cited.  See id. at 1-2.  Second, Defendants argue that, notwithstanding this error, the facts do not give rise to an Eighth Amendment claim for verbal harassment.  See id. at 2.

///

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

///

///

4

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

In their motion to dismiss, Defendants argue in general that Plaintiff has failed to plead sufficient facts to state claims for sexual harassment, verbal harassment, denial of equal protection, or supervisory liability against Defendant Dordon. See ECF No. 17. Defendants seek dismissal of all claims except Plaintiff's retaliation claim against Defendant Mortell. See id. Defendants concede Plaintiff's retaliation claim against Defendant Mortell is sufficient to proceed past the pleading stage. See id. at 10.

Defendants raise the following specific arguments:

1. Plaintiff fails to state a cognizable claim for verbal harassment because verbal harassment, even of a sexual nature, does not violate the Eighth Amendment or constitute cruel and unusual punishment without physical touching. Id. at 5.

2. Plaintiff fails to state a cognizable claim for verbal harassment because none of Mortell's alleged threats "can be considered unusually harsh or gross for a prison setting." Id. at 7-8.

3. Plaintiff fails to demonstrate that Mortell racially discriminated against Plaintiff because Mortell's language is insufficient to establish that Mortell's actions had a racially discriminatory intent. Id. at 8-9.

5

      4.      Plaintiff fails to state a supervisory liability claim because Mortell's Eighth Amendment claim fails, so any claim against Dordon that is based on Mortell's conduct also fails. Id. at 9.

In the original findings and recommendations, the Court concluded as follows with respect to Plaintiff's harassment claims:

> In Claim I, Plaintiff alleges that Defendant Mortell continually sexually and verbally harassed Plaintiff between April and July of 2019. See ECF No. 1, pgs. 5-6. Defendants move to dismiss Plaintiff's Eighth Amendment claim for sexual harassment, arguing that verbal sexual harassment is insufficient without touching. See ECF No. 17-1, pages 5-6. The Court agrees. Defendants also argue that Plaintiff's claim for verbal assault is insufficient because Mortell's language was not unusually gross for a prison setting and caused no psychological damage. See id. at 7. The Court does not agree.

ECF No. 29. Pg. 5.

The Court found that Plaintiff's sexual harassment claim under Claim I should be dismissed with prejudice. See id. at 7. As to the verbal harassment element of Plaintiff's Claim I, citing Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998), the Court found that Plaintiff has pleaded sufficient facts to proceed. See id. at 8-9.

As to Plaintiff's equal protection claim, the Court found that Plaintiff's original complaint failed to plead sufficient facts, but that Plaintiff should be provided an opportunity to amend. See id. at 9-10.

Finally, the Court determined that Plaintiff should be provided leave to amend as to Dordon's alleged supervisory liability for Mortell's conduct. See id. at 10-12.

As discussed above, Defendants object to the Court's initial findings and recommendations addressing their motion to dismiss. Defendants' objections concern the Court's recommended disposition of Plaintiff's verbal harassment claim. The Court issues these amended findings and recommendations to readdress all of Defendants' contentions in light of their objections to the original findings and recommendations with respect to Plaintiff's verbal harassment claim.

///

///

A. **Harassment Claims**

In Claim I, Plaintiff alleges that Defendant Mortell continually sexually and verbally harassed Plaintiff between April and July of 2019. See ECF No. 1, pgs. 5-6. Defendants move to dismiss Plaintiff's Eighth Amendment claim for sexual harassment, arguing that verbal sexual harassment is insufficient without touching. See ECF No. 17-1, pages 5-6. Defendants also argue that Plaintiff's claim for verbal assault is insufficient because Mortell's language was not unusually gross for a prison setting and caused no psychological damage. See id. at 7.

The Court originally found that the sexual harassment component of Plaintiff's claim should be dismissed with prejudice. See ECF No. 29, pgs. 5-7. Defendants do not object to this conclusion, which the Court affirms below. As to the verbal harassment component of Plaintiff's claim, the Court found that Plaintiff's claim was defective but subject to possible amendment. See id. at 7-9. Defendants object to this conclusion, which is readdressed below in light of Defendants' objections.

   1. Sexual Harassment

Plaintiff alleges Defendant Mortell opened Plainitiff's cell door while Plaintiff had a bowel movement in view of a female counselor. See ECF No. 1, page 5. Mortell then allegedly stared at Plaintiff's crotch and said, "just trying to see if what they say about Blacks is true!" Id. Plaintiff asserts that he sought mental health treatment and elevated his medication twice in response to Mortell's harassment. See id. However, Defendants argue that strictly verbal sexual harassment is not cognizable under the Eighth Amendment. See ECF No. 17-1, pg. 5-6. The Court agrees.

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the [C]onstitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000). For example, while a "defendant's alleged statement telling plaintiff to show him her tits would clearly be highly inappropriate, deeply offensive and disrespectful,

7

1    and would serve no legitimate penological objective, court decisions addressing such claims do

2    not support a conclusion that those alleged comments can be characterized as 'unusually gross

3    even for a prison setting' or as being calculated to cause plaintiff psychological damage.'"

4    Moore v. Calderon, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (citing Patrick v.

5    Hernandez, 2018 WL 5095130, at *1, *3 (E.D. Cal. Oct. 17, 2018) (finding that plaintiff failed

6    to state a claim for verbal sexual harassment in violation of the Eighth Amendment despite his

7    allegations that defendant verbally harassed him by telling plaintiff, *inter alia*, to "suck my

8    dick," "lick my nuts," and "you want it in the ass").  The court in Moore cited at least ten other

9    cases supporting the proposition that highly inappropriate comments of a sexual nature do not

10   give rise to a verbal harassment claim under the Eighth Amendment.  See Moore, 2021 WL

11   1541296, at *2.  The court went on to say:

> The comments allegedly made by the defendant here are obviously highly offensive and completely and totally inappropriate.  In light of the sheer number of cases in which such highly inappropriate comments of a sexual nature are allegedly made in the prison setting, perhaps it is time for the Ninth Circuit to reevaluate and address the contours of those circumstances in which the comments are sufficiently "gross even for a prison setting" and to lead to an inference of being calculated to cause psychological damage, so as to state a cognizable Eighth Amendment claim.  Until and unless that happens, however, "unfortunately for plaintiff, the law is clear:  verbal harassment, even if sexual in nature, does not without more violate the Constitution."

18   Id. (citations omitted).

19   The Ninth Circuit also holds incidents involving fondling, touching, or exposure do

20   not give rise to a claim under the Eighth Amendment. Defendants cite Watison, which concluded

21   there was not an Eighth Amendment violation when an officer approached the plaintiff on the toilet

22   and rubbed his thigh on the plaintiff's leg while smiling in a sexual manner. Watison v. Carter, 668

23   F.3d 1108, 1112 (9th Cir. 2012). Defendants assert the same holds true when the harassment "is

24   tinged with race." ECF No. 17-1, page 6. See Freeman v. Arpaio, 125 F.3d 732 (9th Cir. 1997)

25   (abusive language directed at prisoner's religious and ethnic background not actionable), overruled

26   in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008); Hoptowit v.

27   Ray, 682 F.2d 1237, 1252 (9th Cir. 1982) (court cannot order guards to refrain from using racial

28   slurs to harass prisoners); Burton v. Livingston, 791 F.2d 97, 99, 101 n. 1 (8th Cir. 1986) (use of

8

racial slurs in prison does not offend Constitution); accord Tombs v. Rackly, 2:13-CV-1341 JAM KJN, 2013 WL 4678919, at *3 (E.D. Cal. Aug. 30, 2013); Williams v. Lindsey, C 00-3949 CRB (PR), 2000 WL 1677955, at *1 (N.D. Cal. Nov. 2, 2000). Lastly, Defendants cite Austin, where the Court concluded that defendant, an officer in a control booth, did not violate the Eighth Amendment when he exposed his penis to the plaintiff, who is black, and said, "come suck this white dick, boy." Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004). On the basis of this authority, Defendants' argument prevails.

Here, Plaintiff alleges that on May 13, 2019, Defendant Mortell opened Plaintiff's cell door while Plaintiff was using the toilet and said, "Just trying to see if what they say about Blacks is true!" while staring at Plaintiff's crotch.  Plaintiff alleges that this was in view of a female correctional counselor.  While this interaction is undoubtedly racist, whatever verbal sexual harassment that also existed under the facts alleged fails to state a claim under the Eighth Amendment for verbal sexual harassment.  Without facts that show Mortell did more than open the cell door and make a racially charged comment, Mortell's conduct does not offend the Constitution. The sexual harassment claim under Claim I should be dismissed with prejudice.

2.    Verbal Harassment

Plaintiff alleges that Defendant Mortell subjected Plaintiff to an array of inappropriate comments and threats that occurred between April and June of 2019.  See ECF No. 1, pgs. 5-6.  Specifically, Plaintiff alleges that Defendant Mortell told him, "Your kind is suppose[] [sic] to be locked up and its [sic] my job to make sure.", "I'm gonna have you in the hole soon.", I'm gonna hang your ass watch [sic]!", "I'm here to disrupt your program, I'm gonna have you watch [sic]!", "You can't win, this is my yard!", and "Your [sic] mine, watch! Oh, you can't talk?  Say something!"  Id. at 6.

Citing Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998), the Court originally concluded that, while Plaintiff's current allegations of verbal non-sexual harassment were insufficient, Plaintiff should be provided leave to amend.  See ECF No. 29, pgs. 7-9.

///

Defendants' objections to this conclusion concern the Court's references to Oltarzewski and Keenan. In particular, Defendants take issue with the following portion of the Court's original findings and recommendations:

> Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

See ECF No. 31, pg. 1:20-27; see also ECF No. 29, pg. 8:9-12.

Defendants argue that Oltarzewski does not stand for the proposition that allegations of verbal harassment can state an Eighth Amendment claim if it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." See ECF No. 31, pg. 1:20-27. Defendants state that that language is not in Oltarzewski. See id. Defendants are correct that Oltarzewski does not contain any of the language concerning psychological damage.

However, the Court intended to use the case to support a different part of the sentence. Specifically, Oltarzewski stands for the first half of the sentence above ("Allegations of verbal harassment do not state a claim under the Eighth Amendment . . . ."). The clause Oltarzewski supports is not in quotes in the Court's findings and recommendations. See ECF No. 29, pg. 8:9-11. The Court should have added "See" before "Oltarzewski", the omission of which could have understandably misled Defendants to believe the Court was quoting from Oltarzewski. See Blue Book Rule 1.2(a) ("See is used instead of '[no signal]' when the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports."). And to make it even more clear, while still adding "See", the Court could have separated out the clauses to show which case supported which clause.

Defendants argue that Keenan "does not *hold* that verbal harassment can violate the Eighth Amendment if calculated to cause psychological damage." ECF No. 31, pg. 2 (emphasis added). Defendants are again correct.

///

///

10

However, Keenan does *suggest* that there *could* be a cognizable verbal harassment claim under the Eighth Amendment where the "comments [are] unusually gross even for a prison setting" and are "calculated to and [does] cause [] psychological damage." See Keenan, 83. F.3d at 1092. The entire verbal harassment section in Keenan states:

> Keenan alleged that prison guards made "disrespectful and assaultive comments" to him.  However, verbal harassment generally does not violate the Eighth Amendment.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Keenan has not presented evidence that these comments were unusually gross even for a prison setting and were calculated to and did cause him psychological damage.  Here, Keenan alleged only that the comments denied him "peace of mind."  Summary judgment dismissing Keenan's verbal harassment claim was proper.

Keenan, 83. F.3d at 1092.

In the Court's original findings and recommendations, the Court used Keenan to support the proposition that a verbal harassment claim may be cognizable where a plaintiff alleges facts that demonstrate that a defendant's comments were unusually gross and calculated to cause psychological damage. See ECF No. 29, pg. 8:9-11 (citing Keenan, 83. F.3d at 1092).  In citing Keenan, the Court correctly used the "see" signal.  "See is used instead of '[no signal]' when the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports."  Blue Book Rule 1.2(a).  The proposition is not directly stated in Keenan, but the proposition that a verbal harassment claim may be cognizable "obviously follows" from Keenan where the Ninth Circuit stated that the plaintiff in that case had not presented evidence of comments that "were unusually gross even for a prison setting and were calculated to and did cause [plaintiff] psychological damage."  Keenan, 83. F.3d at 1092.  There is an inferential step between Keenan and the proposition that a verbal harassment claim may be cognizable.  The Ninth Circuit seems to suggest that had the plaintiff in Keenan presented evidence of comments that "were unusually gross even for a prison setting and were calculated to and did cause [plaintiff] psychological damage," then Plaintiff's claim may have been cognizable.

///

///

1    Additionally, every district in California has drawn this inference from Keenan. See Baker v. Battad, 2020 WL 487411, at *4 (S.D. Cal. Jan. 30, 2020) (quoting Cox v. Kernan, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019); see also Grisham v. County of Los Angeles, 2019 WL 2360897, at *11 (C.D. Cal. Apr. 26, 2019) (stating that Keenan implies "that harassing comments that were 'unusually gross even for a prison setting and were calculated to and did cause [] psychological damage' might state an Eighth Amendment claim"); see also Foster v. Sprouse, 2021 WL 4243379, at *1 (N.D. Cal. Sept. 17, 2021) (stating, "A cognizable claim for verbal harassment may succeed if the offending comments were 'gross even for a prison setting and were calculated to and did cause [plaintiff] psychological damage.'").

Further, district courts in other states have drawn this inference from Keenan. See Eastman v. Swanson, 2012 WL 2862442, at *5 (D. Mont. June 19, 2012) (stating that "the Keenan case stated that unusually gross comments or comments calculated to and causing psychological damage may be sufficient to state a claim. Keenan, 83 F.3d at 1092. These allegations against Defendant [] are sufficient to state a claim and must file a response to this claim."); see also Baker v. Grant, 2020 WL 4289271, at *6 (W.D. Wash. July 1, 2020); see also Fowler v. Sisolak, 2020 WL 6270276, at *7 (D. Nev. Oct. 26, 2020). Lastly, Defendants themselves made the inference in Defendants' motion to dismiss stating that "unless the comments were 'unusually gross even for a prison setting and were calculated to and did cause [] psychological damage[]', there is no Eighth Amendment violation." ECF No. 17-1, pg. 7:22-24 (citing Keenan, 83 F.3d at 1092).

Despite omitting "See" when citing to Oltarzewski, the Court did not err in its recitation of the law. While the Court could have softened the language and been clearer with which case supports which proposition, the language the Court chose to express what the law is in its findings and recommendations is an accurate reflection of the law. Therefore, and consistent with the Court's original findings and recommendations, if Plaintiff has alleged facts that demonstrate unusually gross comments that were calculated to and did cause Plaintiff psychological damage, the Court should overrule Defendants' objections to the Court's original findings and recommendations as amended herein.

The question before the Court remains whether Plaintiff has alleged sufficient facts in the original complaint to give rise to a cognizable verbal harassment claim under the Eighth Amendment. This issue is revisited below.

### a. Verbal Harassment

Verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." Cox, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092).

#### i. Threats of Violence

Allegations of name-calling, verbal abuse, or threats generally are not unusually gross for a prison setting. See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021). Thus, a defendant's threats to kill or harm a plaintiff are insufficient, without more, to give rise to a cognizable verbal harassment claim. See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019).

However, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." Oliver v. Noll, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012) (citing Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (pointing gun at inmate's head and threatening to shoot amounts to cognizable Eighth Amendment claim; and Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (drawing gun and terrorizing prisoner with threats of death while using racially offensive language states first amendment, due process and equal protection claims)). Further, where there is a threat of non-deadly force where, for example, a defendant aims a weapon at a plaintiff "for the malicious purpose of inflicting gratuitous fear", there is a cognizable Eighth Amendment claim. See Parker v. Asher, 701 F. Supp. 192, 195 (D. Nev. 1988) (holding that "guards cannot aim their taser guns at inmate for the malicious purpose of inflicting gratuitous fear. Allegations of such sadistic conduct state a cognizable claim of cruel and unusual punishment.").

Despite these authorities, the Eastern District of California in Evans found, for the limited purpose of screening, that where the plaintiff alleges that defendants threatened to kill plaintiff or told plaintiff to kill himself, the verbal harassment claim is cognizable.  See Evans v. Fox, 2019 WL 9667840, at *2 (E.D. Cal. Dec. 23, 2019).  This appears to be an exception among the overwhelming number of cases that hold otherwise.

Here, Plaintiff alleges that Defendant Mortell said, "I'm gonna have you in the hole soon.", I'm gonna hang your ass watch [sic]!", "I'm here to disrupt your program, I'm gonna have you watch [sic]!", "You can't win, this is my yard!", and "Your [sic] mine, watch!  Oh, you can't talk?  Say something!"  Plaintiff does not allege that Defendant Mortell aimed a weapon at Plaintiff while making these comments or otherwise threatened violence.  Given the absence of any allegations of a threat of violence, the Court finds that Plaintiff's original complaint cannot allege facts sufficient to state a cognizable verbal harassment claim based on threats of violence.

### ii. Discriminatory Verbal Harassment

Where cases are concerned with "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'"  Carpenter, 2021 WL 2226635, at *3 (quoting Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)) (quoting Oltarzewski, 830 F.2d at 139) (alterations omitted), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

The court in Zavala applied this standard.  Zavala v. Barnik, 545 F. Supp. 2d 1051 (C.D. Cal. 2008).  There, a guard allegedly screamed profanities at an inmate "in regard to Plaintiff's ethnic/racial background," and, while denying the inmate a roll of toilet paper, stated that "it's because of you people that the State is in a budget crisis, you'll have to use the restroom and wipe your ass with your finger!"  Id. at 1054.  The court held that the "alleged comments about Plaintiff's racial, ethnic, or alienage background did not state a claim."  Id. at 1059.

///

14

Plaintiff alleges that Defendant Mortell told him, "Your kind is suppose[] [sic] to be locked up and its [sic] my job to make sure." While these comments are vile, courts have simply not found comments like these to be actionable under the Eighth Amendment. On the facts alleged, the Court finds that Plaintiff cannot state a cognizable Eighth Amendment verbal harassment claim based on discriminatory comments.

### B. Equal Protection Claim

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

On April 1, 2019, Defendant Mortell allegedly tried to provoke Plaintiff by saying, "Your kind is supposed to be locked up and it's my job to make sure." ECF No. 1, pg. 6. Defendants argue that, on its own, this comment does not establish discriminatory intent and is merely inappropriate. See ECF No. 17-1, pg. 8. Defendants use Austin to assert that verbal harassment, even when tinged with race, does not violate the Eighth Amendment. Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004). Burton also asserts that racially offensive language by itself may not state an Equal Protection claim unless it is "coupled with conduct infringing the prisoner's right to security of his person," which then raises an inference that the officer's conduct was motivated by racial bias. Burton v. Livingston, 791 F.2d 97, 101 (8th Cir. 1986). In claiming that an officer's conduct was motivated by racial bias, the plaintiff must prove that the defendant treated the plaintiff differently than any similarly situated individual. Pimentel v. Dreyfus, 670 F.3d 1096, 1106 (9th Cir. 2012) ("To state an equal protection claim of any stripe, whatever the level of scrutiny it invites, a plaintiff must show that the defendant treated the plaintiff differently from similarly situated individuals."); Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (equal protection claim properly dismissed when plaintiff "failed to adequately allege that he was intenetionally treated differently from similarly situated inmates").

In this case, Plaintiff fails to show that Mortell's treatment was based on Plaintiff's status as a member of a protected class. Nor does Plaintiff demonstrate that Mortell singled Plaintiff out and treated him differently from similarly situated inmates. To the contrary, Plaintiff specifically alleges under Claim IV that Mortell's actions were based on retaliation for Plaintiff's grievances. Considering the nature of the claim, and to the extent Plaintiff believes that Mortell's conduct was driven by both a desire to retaliate as well as some racial animus, it is possible for Plaintiff to cure these defects and Plaintiff should be provided an opportunity to amend his equal protection claim alleged in Claim II.

/ / /

/ / /

/ / /

### C. **Supervisory Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

To be held liable as a supervisor, Dordon must have deprived Plaintiff of his rights through Dordon's own conduct. Defendants argue that Plaintiff has not sufficiently alleged a causal link between Dordon and Plaintiff's claim that Dordon was deliberately indifferent to the sexual harassment. ECF No. 17, pg. 9. Plaintiff claims Dordon had knowledge of Mortell's conduct when Dordon authorized Plaintiff's rehousing and did not reassign Mortell to another post. Dordon's authorization to rehouse Plaintiff and lack of action regarding Mortell's conduct regardless of Dordon's motivations or knowledge, are not indicative of participation or an order from Dordon to Mortell to harass Plaintiff. Plaintiff fails

to show Dordon's involvement with Mortell's conduct.  Thus, Plaintiff fails to state an Eighth Amendment claim against Dordon.

To the extent, however, Plaintiff can allege facts to show Dordon acted with the intent to harass Plaintiff or that Dordon ordered Mortell to harass Plaintiff, Plaintiff may be able to cure the defects in Claim III.  Plaintiff should, therefore, be granted leave to amend.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss, ECF No. 17, be granted as outlined below;

2. Defendants' motion be granted as to Plaintiff's claims of harassment, both verbal and sexual, and that Plaintiff's harassment claims be dismissed with prejudice;

3. Defendants' motion be granted as to Plaintiff's equal protection claim and that such claim be dismissed with leave to amend;

4. Defendants' motion be granted as to Plaintiff's supervisory liability claim against Defendant Dordon and that such claim be dismissed with leave to amend; and

5. Plaintiff be provided an opportunity to file a first amended complaint to cure the defects identified herein or proceed on the original complaint as to his retaliation claim against Defendant Mortell only.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these amended findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 2, 2022



DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE